ALLEN, Judge.
The claimant in this workers’ compensation case appeals a final order of the judge of compensation claims denying his claim for wage loss benefits. Because we find competent substantial evidence exists in the record to support the judge’s denial of benefits, we affirm.
*813 The claimant first injured his. back in a work-related accident in 1971, which accident necessitated a laminectomy and a dis-kectomy. In 1981, the claimant injured his back again, this time while working for O.B. Cannon. The claimant’s second back injury also required surgery for removal of disc material and scar tissue. He settled his resulting claim for compensation benefits against the appellee, Aetna Casualty & Surety Company, the carrier on risk at the time of his 1981 accident. In June of 1986, the claimant went to work for a construction company as a painter and sander, work which required high climbing and some lifting. He performed the work without apparent difficulty for approximately one month until he was laid off. He then resumed work as an industrial painter for O.B. Cannon on September 25, 1986. Just a few days later the claimant suffered another work-related back injury, his second while in the employ of O.B. Cannon. At the time of this 1986 injury, the employer was insured by the appellee, Liberty Mutual Insurance Company.
At a hearing in which all the parties to this appeal participated, the claimant sought payment of medical bills and authorization for future remedial care. He also sought catastrophic loss benefits and wage loss benefits from Liberty Mutual. The judge determined that the claimant’s 1986 injury caused only a temporary aggravation of his preexisting back condition, that the aggravation had completely subsided by June 23,1988, and that the claimant was in need of further medical care for his back and bladder conditions, which were causally related to his 1981 industrial accident. Upon these findings, the judge concluded that Aetna was liable for all treatment rendered after June 23, 1988, and all future necessary treatment, and Liberty Mutual was liable for treatment rendered after the 1986 injury until June 23, 1988. The judge implicitly denied the claimant’s request for catastrophic loss and wage loss benefits from Liberty Mutual, because of his conclusion that the claimant’s 1986 injury had no lasting effect upon his condition.
The claimant and Aetna argue on appeal that the evidence shows that the claimant’s 1986 injury caused a permanent impairment, thus entitling claimant to an award of wage loss benefits from Liberty Mutual, and requiring a remand for a more appropriate division of the responsibility for payment of medical costs between the two carriers. Liberty Mutual responds by identifying the considerable evidence in the record which supports the judge’s findings. First, it should be noted that the claimant’s testimony of new and different pains following his 1986 injury was largely discredited by his admission on cross-examination that he had made all of the same complaints of pain at various times prior to his 1986 fall. More importantly, all three of the doctors who testified about the claimant’s back condition opined that his 1986 injury only temporarily aggravated his preexisting, serious back problems.
Dr. Scales, a board certified neurologist, testified that a myelogram taken shortly after the claimant’s 1986 fall revealed preexisting arachnoiditis, inflammation of a membrane covering the spinal cord, but no fracture or other instability that might be caused by a fall. Scales opined that the claimant’s 1986 fall could be expected to cause only a temporary aggravation of his condition, which should have subsided in about one month. Dr. Eddings, a board certified neurologist and orthopedist, examined the claimant about one week before his 1986 injury and again on June 23, 1988, about 18 months later. Based upon his examination and the history that the claimant provided about the fall, Eddings concluded that it did no permanent damage to claimant’s back, though it certainly temporarily increased his pain. When asked about the claimant’s date of maximum medical improvement, Eddings responded that he had never noted any improvement in the claimant’s condition, nor did he expect any.[1] Dr. Wirth, a board certified *814 neurosurgeon, agreed that the aggravation of the claimant’s arachnoiditis caused by the 1986 fall, would have been only temporary. The fact that the claimant has required the use of painkilling narcotics since his 1986 injury which he never required before, did not alter the opinions of Drs. Scales or Eddings about the temporary nature of the aggravation caused by that fall; both doctors noting the habituating characteristics of such medication.
In view of all of this supporting testimony, it cannot be said that the judge erred in reaching the conclusions that he did. It is not the role of this court to search the record for evidence which supports a claim for benefits disallowed by the judge of compensation claims; rather, the court is bound to affirm his decision when, as here, it has a record basis. See Cuccarollo v. Gulf Coast Bldg. Contractors, 500 So.2d 547 (Fla. 1st DCA 1986), quoting, Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1988). The claimant’s final contention that a remand is necessary because the judge’s reasons for rejecting the testimony of Drs. Eddings and Wirth are not explained in his order or apparent from the record, is without merit because the record reflects that the doctors’ testimony was consistent with, not contrary to, the opinion of Dr. Scales, upon which the judge expressly relied.
Accordingly, we affirm the denial of the claimant’s request for wage loss benefits from Liberty Mutual.
WOLF, J., concurs.
ERVIN, J., dissents with written opinion.

. This testimony supports the judge’s implicit finding that the claimant reached maximum medical improvement after the 1986 injury on June 23, 1988. Though the judge could have made specific reference to Eddings' testimony in his order, it cannot be said that the order is *814 "so deficient as to impede review when measured against the record facts.” Curry v. Miami Dolphins, Ltd., 522 So.2d 1010, 1011 (Fla. 1st DCA 1988).