PER CURIAM.
In this workers’ compensation ease, the Judge of Compensation Claims (“JCC”) rejected the claim based on a finding that claimant’s testimony was not'credible and the JCC did not believe an accident had actually occurred at work. “[I]t is well established that it is the JCC’s duty to judge the credibility of the witnesses and to resolve conflicts in the evidence, and that this court is bound by the JCC’s findings if they are supported by competent substantial evidence (CSE), i.e., evidence that is logical and reasonable,” Fritz v. Courtyard by Marriott, 592 So.2d 1167 (Fla. 1st DCA 1992), and it is not this court’s function to search the record for evidence in support of a claim that has been disallowed, Lawrence v. O.B. Cannon & Sons, 579 So.2d 812 (Fla. 1st DCA 1991). These principles were reaffirmed recently in Ullman v. City of Tampa Parks Department, 625 So.2d 868, (Fla. 1st DCA 1993). However, because several of the findings providing a foundation for the ultimate finding that claimant’s testimony lacked credibility are not supported by competent substantial evidence in the record, we reverse and remand for clarification.
Claimant alleged he was injured while picking up pulpwood blocks and putting them into a trailer to be taken to the chipper. At hearing, Claimant testified that on September 26, 1990, when he picked up a pulpwood log and threw it onto his shoulder, he experienced sharp pain in his neck. He shook his neck two or three times and the pain went away. Claimant further testified that at *305 work the next day, when he picked up a wood block weighing 40-60 pounds to throw it into the trailer, the pain returned. On September 27,1990, he reported the incident to Mrs. Thrasher, the secretary at Cochran Forest Products, and at the end of the day he went to the emergency room, which recorded that claimant said: “was lifting large block of wood yesterday when he had sudden onset of pain L side of neck. Pain worse now ...” Initially cervical strain was diagnosed, but later tests revealed a herniated disc.
In addition to claimant’s hearing and deposition testimony, the JCC heard the testimony of Mr. Cochran, owner of Cochran Forest Products, Michael Brown, claimant’s coworker, Mrs. Thrasher, and Dr. Latimer. In the order, the JCC found:
The claimant alleged at the hearing that he sustained a herniated disc in his neck on September 26,1991, when he was carrying a wood log on his shoulder. This is contrary to his deposition testimony wherein he testified that he carried this five foot long log on his shoulder for ten feet before dropping it. The claimant testified that he felt pain in his neck, but he shook his neck and the pain went away. The following day, the claimant was picking up a wood block and throwing it into a buggy when he felt pain in the left side of his neck. Contrary to the testimony of Michael Brown that the block only weighed between 5 and 15 pounds, the claimant testified that this wood block weighed between 40-50 lbs.
In the claimant’s deposition, however, the claimant testified that he was throwing a three foot long block into the trailer when he was injured, rather than the log as he mentioned at the hearing. In fact, the claimant only mentioned one incident in his deposition, not two as he alleged at the hearing. I find the claimant’s testimony discredited because he did not testify in his deposition that any incident occurred on September 27, 1990 as he did at the hearing.
[[Image here]]
I accept and adopt the testimony of Michael Brown wherein he testified that the claimant did not report any injury to him, although they worked side by side on September 26, 1990, and on the following day. I find this testimony more credible than the claimant’s wherein he denied that anyone was with him the day of the accident (Ronnie Rollins deposition, page 33) yet at the hearing admitted working with Michael Brown. The claimant also did not report the injury to the plant supervisor, the person to whom injuries were to be reported.
[[Image here]]
The claimant’s credibility is further weakened by the two inconsistent histories he gave to Dr. Latimer. Dr. Latimer testified at the hearing that the claimant injured his neck when he fell while carrying a log on.his shoulder as well as injuring it while attempting to throw a log.
[[Image here]]
Based upon the testimony of Michael Brown, James Cochran and Mary Thrasher, I find that the claimant did not injure his neck in the course and scope of his employment, but rather, injured it while lifting weights off the job. I also reached this decision based upon the inconsistencies in the claimant’s story between his deposition and his hearing testimony and between the inconsistent stories he gave to Dr. Latimer, (emphasis in original)
The JCC discredited claimant’s testimony based on the finding that he did not report the injury to the plant supervisor, “the person to whom injuries were to be reported.” This finding is not supported in the récord. We have located no evidence in the record that injuries were required to be reported to the plant supervisor. Claimant reported to Mrs. Thrasher, who filled out a notice of injury form and supplied claimant with the paperwork needed to go to the emergency room. While Mrs. Thrasher did say she asked claimant why he had not reported to his supervisor and “for whatever reason Ronnie didn’t feel comfortable going to his supervisor and he came to me,” there was no testimony that the plant supervisor was “the person to whom injuries were to be reported” or that it was inappropriate to report to Mrs. Thrasher.
*306 The JCC found that claimant had given inconsistent histories to Dr. Latimer and further discredited his testimony on that basis. Dr. Latimer testified as follows:
Q: And could you please tell the judge, what your first examine consisted of?
A: He told me that while working, I believe on the 26th day of September of last year, that he had slipped and fallen while carrying a heavy load, I believe a log or something on his shoulder. He had experienced severe sharp pains in his neck, between his shoulder blades and extending down both of his arms. When he came to see me, he was complaining of uh, the same severe pains in his neck, uh, the pains between his shoulder blades, weakness in the left arm and uh, a tingling sensation in the left hand.
Q: Now, doctor if you would like to refer to your records that would be fine. Do you uh, could you uh, more describe the history that he gave you of his injury, in a little more detail as you can recall it or as it is in your records?
A: Uh, I can elaborate on the initial uh, evaluation but I repeated go over the history when people come back to me, on the uh, in September I asked him again, he told me at that time that he was working as a framer at uh, Cochran Forest Products, at approximately 11 o’clock in the morning he was carrying a heavy pulpwood log on his left shoulder which he estimated at weighing about 60 pounds, he had uh, thrown or twisted in some way the log off his shoulder, producing the sharp shooting pains at the root of his neck uh, and down into his shoulders....
The JCC found that Claimant gave Dr. Latimer inconsistent histories, apparently because of the reference in Dr. Latimer’s testimony to a slip and fall. It appears that this was an error in Dr. Latimer’s recollection rather than an inconsistency in claimant’s story, however, which Dr. Latimer contradicted when he began referring to his notes, as indicated by the dialogue quoted above. His written notes of 1/11/91, when he first saw claimant, do not record a history of a slip and fall, but only reflect that claimant was injured while carrying logs on his neck. This was consistent with the later notes and with Dr. Latimer’s testimony, which reflected that claimant was carrying a pulpwood log on his shoulder which he threw or twisted in some way off his shoulder. Thus there is not competent substantial evidence that claimant gave Dr. Latimer inconsistent histories. This finding was particularly important to the ultimate finding as to claimant’s credibility, as indicated in the JCC’s order.
Paragraph 5 of the order, in which the JCC set forth the inconsistencies he found between claimant’s hearing and deposition testimony, is somewhat confusing and should also be clarified on remand. For example, the JCC stated claimant’s hearing testimony “is contrary to his deposition testimony wherein he testified that he carried this five foot log on his shoulder for ten feet before dropping it.” This is a misstatement. At hearing, claimant was asked how far he would have had to carry the log, to which he replied he would have had to carry it about ten feet, but he never got that far due to the pain in his neck.
The JCC also discredited claimant’s testimony in part based on the finding that Brown testified that he and claimant worked side by side on the September 26th and the following day, yet claimant did not mention the injury to Brown. Our review of the record indicates Brown’s testimony at hearing was directed to one particular day. It is not clear from Brown’s testimony that the two worked side by side on both the 26th and the 27th. In addition, Brown’s testimony that claimant did not mention an injury is not necessarily inconsistent with claimant’s testimony that on September 26th, when he felt pain in his neck, he shook his neck two or three times and the pain went away.
We do not reach the issue of the applicability of the logical cause doctrine at this time except to note that the JCC correctly found that the determination of credibility of claimant’s testimony governs whether the logical cause doctrine applies in this case, given that the evidence of causation was provided by claimant and Dr. Latimer, and Dr. Latimer’s opinion is founded on the history claimant gave him. See Ullman, supra.
*307 The determination of compensability in this case depends on the finding as to claimant’s credibility, and several of the reasons the JCC gave for rejecting claimant’s testimony as not credible are not supported in the record. Because we are unable to determine that the JCC would have reached the same conclusion based on the remaining findings, we reverse and remand for clarification. In the event clarification by the same JCC is not possible, we reverse and remand for further proceedings consistent with this opinion.
ERVIN, JOANOS and WOLF, JJ., concur.